******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JERMAINE T. SCOTT
(AC 36359)

Lavine, Alvord and Bear, Js.

*Argued April 15—officially released July 28, 2015*

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*Janice Wolf*, senior assistant public defender, for the appellant (defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian K. Sibley, Sr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Jermaine T. Scott, appeals from the judgment of conviction, rendered after a trial to the court,[1] of criminal possession of a firearm in violation of General Statutes § 53a-217 (a).[2] On appeal, the defendant (1) claims that the court improperly determined that he validly waived his right to a jury trial and (2) requests this court to exercise its supervisory authority to provide a more uniform procedure for conducting waivers of the right to a jury trial. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of the defendant's claim. On the evening of June 19, 2010, Marquise Baskin was shot and killed in New Haven. The defendant was charged with Baskin's murder and criminal possession of a firearm. On September 10, 2013, the defendant appeared with counsel before the court to conduct jury selection. The following colloquy ensued:

"The Court: Okay. All right. Good morning to everybody. And this is Mr. Scott here. . . . Is it my understanding, Attorney Hopkins, that your client is opting to go courtside on the Second Count which is a claim that he possessed a firearm in violation, and he had been a convicted felon, in violation of [General Statutes § 53a-217 (a)]?

"[Defense Counsel]: That's correct, your Honor.

"The Court: All right. I'm—I want to do a canvass of Mr. Scott now. Are you prepared, Attorney Hopkins, for me to do that, or you want a minute?

"[Defense Counsel]: Oh, yes. Could I just have a moment.

"The Court: Sure.

"[Defense Counsel]: Yes. I think he's prepared for the canvass, your Honor.

"The Court: Sure. Mr. Scott, if you could stand up and, Counsel, if you could stand up also. All right. Mr. Scott, I'm going to ask you a few questions concerning what I anticipate to be your waiver of the right to have the jury decide the second count, which is possession of a firearm by a convicted felon. Is it my understanding that you want the Court, you want the judge to make a decision of guilty or not guilty on that count?

"[The Defendant]: Yes. Yes, sir.

"The Court: All right. Your attorney is standing next to you. If you don't understand my question or are confused or want his advice you could just look to him . . . before you answer my question. Okay.

"[The Defendant]: Yes, sir.

"The Court: The purpose of my questions is not to

trick you or trip you up, just to make sure that you understand the waiver of a jury right. So on the First Count, which is murder, the jury would make a decision on whether the State of Connecticut has met its burden of proving each and every element beyond a reasonable doubt. That would be a jury's decision on guilt or non-guilt, you understand that; correct?

"[The Defendant]: Yes, sir.

"The Court: But on the Second Count about a possession of a firearm you're indicating to this Court that you want the judge, you want me to make a decision on whether the State of Connecticut has proven each and every element necessary in that count beyond a reasonable doubt. Is that correct?

"[The Defendant]: Yes, sir.

"The Court: All right. And you had enough time to talk to Attorney Hopkins about that decision?

"[The Defendant]: Yes, sir.

"The Court: And you're satisfied with his advice and counsel on this decision?

"[The Defendant]: Yes, sir.

"The Court: All right. But you're—you are waiving your right to have a jury decide the Second Count, and this is your decision after consulting with Attorney Hopkins that you're waiving your right to have the jury decide that Second Count and you want the Court to decide that Second Count, do you understand that?

"[The Defendant]: Yes, sir. Yes.

"The Court: All right. And you understand my—my verdict after hearing the evidence could be either consistent with the jury's verdict or inconsistent, in other words, one count might be guilty or not guilty and my count could be guilty or not guilty. Do you understand that?

"[The Defendant]: Yep. Yes, sir.

"The Court: All right. Do you have any questions about what I asked you?

"[The Defendant]: No, sir.

"The Court: All right. And nobody's forcing you to waive this right, this is your free act and deed waiving your right to have a jury decide the Second Count; is that correct?

"[The Defendant]: Yes, sir.

"The Court: Okay. Attorney Hopkins, did you want to canvass your client at all?

"[Defense Counsel]: No, your Honor."

Trial of the matter commenced on October 15, 2013. On October 18, 2013, the jury returned its verdict, find-

ing the defendant not guilty of murder. Thereafter, the trial court found the defendant guilty on the count of criminal possession of a firearm. The court first found that the state had proven that the defendant was a convicted felon. The court then credited the statement of the witness to the shooting, who told police that on the evening of June 19, 2010, she saw the defendant, her nephew, with a gun and witnessed him fire six shots. The court then sentenced the defendant to five years incarceration. This appeal followed.

I

The defendant claims on appeal that the court improperly determined that his waiver of the right to a jury trial was knowing and intelligent. Specifically, the defendant contends that the court's canvass was inadequate in that "it failed to (1) tell how many jurors [the defendant] would have had versus just one judge, (2) indicate that the jury would have to be unanimous, and (3) evaluate [the defendant's] educational, work, and jury trial experience." The defendant raises this claim for the first time on appeal and requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] We review the defendant's claim because the record is adequate for review and his claim is of constitutional magnitude.[4] *State* v. *Tocco*, 120 Conn. App. 768, 776, 993 A.2d 989, cert. denied, 297 Conn. 917, 996 A.2d 279 (2010). We thus turn to *Golding*'s third prong to determine whether "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 240.[5]

We first set forth our standard of review and applicable legal principles. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. . . . Our inquiry is dependent upon the particular facts and circumstances surrounding [each]

case, including the background, experience, and conduct of the accused. . . . In examining the record, moreover, we will indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . [will] not presume acquiescence in the loss of fundamental rights. . . . In addition, a waiver of a fundamental constitutional right is not to be presumed from a silent record." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Gore*, 288 Conn. 770, 775–77, 955 A.2d 1 (2008).

In *Gore*, our Supreme Court concluded that the right to a jury trial must be personally and affirmatively waived by the defendant in order to render such waiver valid. Id., 783. The court additionally exercised its supervisory authority to require, in the absence of a written waiver, the trial court to "canvass the defendant briefly to ensure that his or her personal waiver of a jury trial is made knowingly, intelligently and voluntarily." Id., 787. The court stated that "[t]his canvass need not be overly detailed or extensive, but it should be sufficient to allow the trial court to obtain assurance that the defendant: (1) understands that he or she personally has the right to a jury trial; (2) understands that he or she possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily has chosen to waive the right to a jury trial and to elect a court trial." (Footnote omitted.) Id., 788–89. The court further explained that "[i]t is not necessary that the canvass required for a jury trial waiver be as extensive as the canvass constitutionally required for a valid guilty plea" because in pleading guilty, a defendant forfeits a number of constitutional rights. Id., 789 n.18.

In the present case, the defendant personally and affirmatively expressed on the record his desire to waive his right to a jury trial. The threshold *Gore* requirement having been satisfied, we proceed to a "totality of the circumstances analysis to determine whether the defendant's personal waiver of a jury trial was made knowingly, intelligently and voluntarily." Id., 782 n.12.

The defendant claims that the trial court's canvass was inadequate because the court failed to advise him that "in order to convict him, a jury of twelve persons must make a unanimous decision that he is guilty of the crime alleged" and failed to "elicit any information from [him] regarding his educational background or any previous experience he had with a jury trial."[6] Our review of the totality of the record in this case leads us to conclude that the defendant validly waived his right to a jury trial.

At the time of his waiver, the defendant was represented by counsel and he personally indicated that he had conferred with his counsel concerning the waiver. As this court previously has recognized, "[t]he fact that the defendant was represented by counsel and that he

conferred with counsel concerning the right to waive his right to a jury trial supports a conclusion that his waiver was constitutionally sound." *State* v. *Tocco*, supra, 120 Conn. App. 780; see also *State* v. *Smith*, 100 Conn. App. 313, 324, 917 A.2d 1017, cert. denied, 282 Conn. 920, 925 A.2d 1102 (2007). At the beginning of the canvass, the defendant was instructed by the court to look to his counsel before answering if he did not understand any of the court's questions. The defendant was further informed that the purpose of the court's questions was to ensure that he understood the waiver of the right to a jury trial. During the court's canvass, the defendant stated that he had sufficient time to talk with his attorney about the decision and further confirmed that he was satisfied with his attorney's advice and counsel. At the end of the canvass, the court inquired as to whether defense counsel wanted to canvass the defendant, and defense counsel declined to add to the canvass. See *State* v. *Jeremy D.*, 149 Conn. App. 583, 594, 90 A.3d 979 (noting that defense counsel had nothing further to add to the canvass), cert. denied, 312 Conn. 913, 93 A.3d 596 (2014).

Other responses during the canvass demonstrated that the defendant understood his rights. See *State* v. *Woods*, 297 Conn. 569, 586, 4 A.3d 236 (2010). The court inquired whether the defendant wanted the court to make a decision of guilt on the second count, and the court explained to the defendant that the jury would decide the first count.[7] The defendant confirmed multiple times that he understood. The court further clarified that the court's finding might or might not be consistent with the jury's verdict, in that he could be found guilty on one count and not guilty on the other. The court asked the defendant whether he had any questions, to which he responded no. The court inquired as to whether the defendant's waiver of his right to a jury trial was his free act, to which the defendant responded yes. The record contains no indication of any hesitancy or indecision on the part of the defendant, as each of his answers consisted of a clear "yes, sir," or "no, sir." See *State* v. *Jeremy D.*, supra, 149 Conn. App. 592 ("the transcript of the colloquy . . . reflects that the defendant responded to the court's inquiries in an intelligible and well mannered fashion"); *State* v. *Tocco*, supra, 120 Conn. App. 781 ("[t]he defendant's immediate and unequivocal replies to the court's inquiries reflected his strong desire to proceed to trial before the court, not a jury"). The record reveals that the defendant, in responding to the court's inquiries, unambiguously confirmed that he wanted to waive his right to have a jury decide the second count.

We must also consider the background, conduct, and experience of the defendant to determine whether there has been an intelligent waiver of the constitutional right to a jury trial. See *State* v. *Woods*, supra, 297 Conn. 585. The defendant argues in the present case that his

lengthy history of incarceration makes it unlikely that he had a significant work history and that "based on the last ten years of [the defendant's] judicial involvement, it does not appear that he had been to trial before." In support of the defendant's contention that the court failed to inquire sufficiently into his background, he cites cases in which the trial court discussed the defendant's level of education and life experience. See *State* v. *Altayeb*, 126 Conn. App. 383, 395, 11 A.3d 1122, cert. denied, 300 Conn. 927, 15 A.3d 628 (2011); *State* v. *Tocco*, supra, 120 Conn. App. 780. When there is "no evidence to suggest that the defendant was not of ordinary intelligence or educational background . . . or that he lacked meaningful life experience"; (citation omitted; internal quotation marks omitted) *State* v. *Rizzo*, 303 Conn. 71, 92, 31 A.3d 1094 (2011), cert. denied,      U.S.    , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012); our courts have rejected challenges to the validity of a jury waiver.

In the present case, the defendant was thirty-three years old at the time of the canvass. Despite his argument that "it does not appear that he had been to trial before," the defendant was a convicted felon and had been sentenced on at least two prior occasions. Thus, he necessarily had some familiarity with judicial procedures. See *State* v. *Smith*, supra, 100 Conn. App. 324 (considering, in determining that the defendant validly waived his right to a jury trial, that he "had some familiarity with the court system, having a lengthy criminal history that included robberies").

The court's failure to include in its canvass the number of jurors to which the defendant would be entitled and the requirement that the jury's verdict be unanimous does not compel the conclusion that the defendant's waiver was constitutionally deficient. Our courts have declined to require a formulaic canvass and "have rejected claims that an otherwise valid waiver of the right to a jury is undermined by the trial court's failure to include a specific item of information in its canvass." *State* v. *Rizzo*, supra, 303 Conn. 103.

We conclude that the totality of the circumstances in the present case demonstrates that the defendant knowingly, intelligently, and voluntarily waived his right to a jury trial. Accordingly, his claim fails.

## II

The defendant next asks this court to exercise its supervisory authority to require a more uniform procedure for conducting the canvass on the waiver of the right to a jury trial, and he provides a list of factors that he proposes be included in the trial court's canvass. Specifically, he argues that "[t]he trial courts are inconsistent in the depth of their canvass of the defendant even on the most basic points of how many jurors, the unanimity requirement, and how the judge's role

changes for a court trial. Just as specific rules exist regarding a canvass and acceptance of a plea, so should specific rules exist regarding a canvass and acceptance of a jury trial waiver." In support of his argument, the defendant references procedures established in other states. We decline the defendant's request.

"Supervisory authority is an extraordinary remedy that should be used sparingly. . . . Although [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance [in which] these traditional protections are inadequate to ensure the fair and just administration of the courts." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 498, 102 A.3d 52 (2014).

We conclude that traditional protections are adequate to safeguard the rights of a defendant who waives his right to a jury trial and the integrity of the judicial system; see *State* v. *Jose V.*, 157 Conn. App. 393, 408–409, A.3d (2015); and we therefore decline to exercise our supervisory authority.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In a trial to a jury, the defendant was found not guilty of murder in violation of General Statutes § 53a-54a (a).

[2] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of a felony committed prior to, on or after October 1, 2013 . . . ."

[3] Under *State* v. *Golding,* supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.)

[4] The defendant asserts his constitutional right to a jury trial under both the United States and Connecticut constitutions. "[T]he defendant has not provided this court with a separate analysis of his rights under the Connecticut constitution or asserted that the Connecticut constitution affords him greater protections, for purposes of his claim, than its federal counterpart. Accordingly, for purposes of this appeal we treat the jury trial rights arising from the state and federal constitutions as coextensive." (Internal quotation marks omitted.) *State* v. *Tocco*, 120 Conn. App. 768, 776 n.3, 993 A.2d 989, cert. denied, 297 Conn. 917, 996 A.2d 279 (2010).

[5] The defendant alternatively requests that this court reverse his conviction pursuant to the plain error doctrine, which is codified at Practice Book § 60-5. Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Because we ultimately determine that the defendant's waiver of his right to a jury trial was valid, "it necessarily follows that the trial court did not commit plain error." *State* v. *Rizzo*, 303 Conn. 71, 89 n.9, 31 A.3d 1094 (2011), cert. denied, U.S.    , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012).

[6] The defendant further argues that because there was only one witness to the shooting, "a complete discussion by the trial court with [the defendant] was required to ascertain whether he understood that twelve different people from different backgrounds and experiences would need to believe [the witness'] version of events she told the police, in order to convict him of count two." As the state points out, however, the defendant offers no authority suggesting that the quality or quantity of the evidence expected to be presented determines the adequacy of the canvass. Accordingly, the defendant's argument proves unavailing.

[7] The court additionally clarified that the jury would be deciding whether the state had "met its burden of proving each and every element beyond a reasonable doubt" on the first count, and that the judge would be deciding the second count according to the same standard.